**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SEBASTIAN CASTAÑEDA-VERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N25C-09-256 SPL |
| | ) | |
| ALEX KAPLAN, CHRISTIAN | ) | |
| GRAVIER, ANTHONY | ) | |
| JAROSZEWSKI, BRENDAN QUINN, | ) | |
| SIGMA ALPHA EPSILON | ) | |
| FRATERNITY, and DELAWARE | ) | |
| ALPHA CHAPTER OF SIGMA | ) | |
| ALPHA EPSILON FRATERNITY | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 30, 2026
Decided: June 30, 2026

*Upon Defendant Sigma Alpha Epsilon Fraternity's Motion to Dismiss,*
**DENIED.**

*Upon Defendant Anthony Jaroszewski's Motion to Dismiss,*
*Joined by Defendants Christian Gravier, Alex Kaplan, and Brendan Quinn,*[1]
**DENIED.**

**ORDER**

---

[1] Kaplan joined Jaroszewski's motion. D.I. 26. Quinn filed a motion to dismiss in which he joined Jaroszewski's motion (D.I. 32) and, during oral argument, withdrew his challenges to Castañeda-Vera's failure to amend his complaint. Gravier moved for judgment on the pleadings and joined Jaroszewski's motion. D.I. 35. Because all "individual defendants" assert the same basis for dismissal, the Court's assessment of Jaroszewski's motion applies with equal force to all motions filed by the individual defendants.

This 30th day of June 2026, upon consideration of Defendants' Motions to dismiss, Sebastian Castañeda-Vera's responses, Defendants' replies, the parties' oral arguments, and the record in this case, it appears to the Court that:

## BACKGROUND

1. On September 30, 2023, the Delaware Alpha Chapter ("Delaware Alpha") of the Sigma Alpha Epsilon ("ΣAE") national fraternity hosted a house party in Newark, Delaware.[2] Delaware Alpha chapter president, Kaan Erturk,[3] and fellow fraternity members Joseph Lombardo,[4] Alex Kaplan, Christian Gravier, Anthony Jaroszewski, Brendan Quinn, and Kyle Ontra attended the party.[5]

2. Ontra invited Castañeda-Vera and Seth Nis to join him at the party.[6] Ontra met Castañeda-Vera and Nis outside the party and escorted them inside the house.[7] Castañeda-Vera and Nis proceeded to the basement.[8]

---

[2] D.I. 1 ("Compl.") ¶ 17.

[3] Castañeda-Vera brought a separate complaint against Lombardo and Erturk. N24C-01-246.

[4] *Id.*

[5] *See* Compl. ¶¶ 17, 20, 22, 25.

[6] Compl. ¶¶ 1, 19.

[7] Compl. ¶ 19.

[8] Compl. ¶ 19.

3.       Lombardo approached Castañeda-Vera and demanded to know who he was and who had invited him.[9]  Castañeda-Vera informed Lombardo that Ontra had invited him to the party.[10]  Lombardo claimed to not know Ontra.[11]

4.       Castañeda-Vera and Nis went upstairs to find Ontra.[12]  As they ascended the steps, Lombardo pushed Castañeda-Vera multiple times.[13]  As they reached the main floor, and after Lombardo's third push, Castañeda-Vera pushed Lombardo back.[14]  A melee ensued.[15]

5.       Lombardo punched Castañeda-Vera in the face, and about ten to fifteen other ΣAE fraternity members joined the fracas, several of whom continued to punch Castañeda-Vera in his face and body.[16]  The fraternity members threw Castañeda-Vera from the house where he landed face down on the ground.[17]

---

[9] Compl. ¶ 20.
[10] Compl. ¶ 20.
[11] Compl. ¶ 20.
[12] Compl. ¶¶ 20-21.
[13] Compl. ¶ 21.
[14] Compl. ¶ 21.
[15] Compl. ¶ 21.
[16] Compl. ¶¶ 21-22.
[17] Compl. ¶ 23.

6.    Fraternity members exited the house and continued to beat Castañeda-Vera.[18]  Nis and Ontra attempted to stop the physical altercation.[19]

7.    After the assault, Castañeda-Vera, Nis, and Ontra went to an urgent care facility on Main Street in Newark, Delaware.[20]  At the urgent care facility, Castañeda-Vera called the Newark Police Department, and officers arrived to take statements from the three men and transport Castañeda-Vera to the Christiana Hospital for treatment.[21]

8.    Castañeda-Vera suffered injuries to his nose, jaw, and left knee; he required surgery on his nose.[22]  In addition to his physical injuries, Castañeda-Vera suffered psychological and emotional trauma.[23]

9.    On October 20, 2023, ΣAE informed Delaware Alpha that it was imposing sanctions for violating Section 61(C) of "Fraternity Law" as a result of the physical altercation that occurred between Delaware Alpha members and Castañeda-Vera.[24]  Under Section 61(C) of Fraternity Law, Delaware Alpha members offended

---

[18] Compl. ¶ 24.

[19] Compl. ¶ 24.

[20] Compl. ¶ 28.

[21] Compl. ¶¶ 29-30.

[22] Compl. ¶¶ 32, 36.

[23] Compl. ¶ 36.

[24] Compl. ¶ 33.

"institutional rules of the collegiate host institution of the Chapter Collegiate on matters of behavior."[25]

10.    On September 30, 2025, Castañeda-Vera filed a complaint in the Superior Court asserting assault and battery claims against Kaplan, Gravier, Jaroszewski, and Quinn and vicarious and custodial liability claims against ΣAE and Delaware Alpha.[26]

11.    ΣAE moved to dismiss the complaint, arguing the Court lacks personal jurisdiction over it and that Castañeda-Vera failed to assert facts supporting his claims of vicarious and custodial liability.[27]  Jaroszewski, joined by Kaplan, Gravier, and Quinn (" Individual Defendants"), moved to dismiss the complaint, alleging Castañeda-Vera failed to adequately state his claims of assault and battery.[28] Castañeda-Vera, of course, opposes Defendants' motions to dismiss.

---

[25] Compl. ¶ 33.

[26] Compl.

[27] D.I. 17 ("ΣAE MTD").

[28] D.I. 25 ("Defs. MTD"). Kaplan joined the Motion to Dismiss.  D.I. 26.  Quinn joined the Motion to Dismiss.  D.I. 32.  Gravier joined the Motion to Dismiss.  D.I. 35.

**LEGAL STANDARDS**

12. Upon a motion to dismiss for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2), the plaintiff has the burden of showing a basis for this Court's jurisdiction over a nonresident defendant.[29] If, as here, there has been no evidentiary hearing or meaningful discovery, the Court evaluates whether the plaintiff has made a prima facie showing of personal jurisdiction based on the record as a whole, including the complaint, affidavits, and the parties' briefs.[30] "The Court accepts all well-pleaded factual allegations in the complaint as true, unless contradicted by affidavit, construes the record in the light most favorable to the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party."[31]

13. Delaware Superior Court Civil Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted.[32] When assessing a motion to dismiss under this rule, this Court must:

---

[29] Super. Ct. Civ. R. 12(b)(2); *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005) (citing *Jacobson v. Ronsdorf*, 2005 WL 29881, at *3 (Del. Ch. Jan. 6, 2005)).

[30] *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. Ct. June 1, 2021) (citations omitted).

[31] *Degregorio v. Marriott Int'l, Inc.*, 2018 WL 3096627, at *5 (Del. Super. Ct. June 20, 2018) (citing *Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1165 (Del. Super. Ct. 2016)).

[32] Super. Ct. Civ. R. 12(b)(6).

(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[33]

14.    Delaware's pleading standards at the motion to dismiss stage are minimal.[34] If, based on the circumstances presented, the plaintiff may recover, then the motion to dismiss must be denied.[35] Conversely, a motion to dismiss will be granted if "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[36] The Court need not "accept conclusory allegations unsupported by specific facts nor [] draw unreasonable inferences in the plaintiff's favor."[37]

---

[33] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[34] *Id.* at 536 (citing *Savor, Inc.*, 812 A.2d at 896).

[35] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[36] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (quoting *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4 (Del. Super. Ct. Jan. 26, 2021)).

[37] *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (citing *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008) (internal quotations omitted)).

**ANALYSIS**

### A. Castañeda-Vera's complaint makes a prima facie showing of jurisdiction over ΣAE.

15.     ΣAE claims this Court lacks personal jurisdiction because "ΣAE does not have continuous and systemic contacts with Delaware required for general personal jurisdiction"[38] and it "does not have sufficient minimum contacts with Delaware necessary for specific personal jurisdiction."[39]  Castañeda-Vera responds that ΣAE's "chartering" of Delaware Alpha is enough to establish personal jurisdiction.[40]

16.     To determine whether a Court has personal jurisdiction over a party, Delaware Courts apply a two-part test.[41]  First, the Court considers "whether Delaware's Long Arm Statute is applicable."[42]  Second, the Court evaluates "whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment (the so-called 'minimum contacts' requirement)."[43]  In construing the Long-Arm statute, the Court must interpret it

---

[38] ΣAE MTD at 8.

[39] *Id.* at 9.

[40] D.I. 36 at 20.

[41] *AeroGlobal Cap. Mgmt., LLC,* 871 A.2d at 437-438 (citing *LaNuova D & B, S.p.A. v. Bowe, Inc.,* 513 A.2d 764, 769 (Del 1986)).

[42] *Id*. at 438 (citing *Waters v. Deutz Corp.*, 479 A.2d 273 (Del. 1984)).

[43] *Id.*

7

"broadly to the maximum extent permissible under the Due Process Clause."[44] "In other words, the [Delaware] Supreme Court has instructed that trial courts should permit service under § 3104 if the statutory language plausibly permits service, and rely upon a Due Process analysis to screen out uses of the statute that sweep too broadly."[45]

17. Delaware's Long Arm Statute provides in pertinent part:

a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.[46]

18. Under Delaware's long arm statute, "personal jurisdiction is either general or specific."[47] General jurisdiction requires "that the defendant have greater contacts with the forum state,"[48] but "grants authority to a state's courts to 'assert []

---

[44] *Tell v. Roman Catholic Bishops of Diocese of Allentown*, 2010 WL 1691199, at *8 (Del. Super Ct. Apr. 26, 2010) (citing *LaNuova D & B, S.p.A.,* 513 A.2d at 768).

[45] *Sample v. Morgan*, 935 A.2d 1046, 1056 (Del. Ch. 2007) (citations omitted).

[46] 10 *Del. C.* § 3104(c)(1) – (4) (cleaned up).

[47] *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *4 (Del. Super. Ct. Sept. 30, 2016).

[48] *Id.*

8

jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum.'"[49] Specific jurisdiction "requires a link between the cause of action and the defendant's conduct."[50]

19. Castañeda-Vera's complaint alleges sufficient facts to support a finding of specific jurisdiction here. To find a plaintiff has established specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the state's regulation."[51]

20. This Court in *Furek v. University of Delaware*, addressed a similar challenge to its jurisdiction over claims brought against a national fraternity for "local" conduct.[52] There, the plaintiff sued a national fraternity for injuries sustained at the Delaware local chapter fraternity house.[53] The only contact the national

---

[49] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 426 (1984) (Brennan, J., dissenting)).

[50] *Rotblut*, 2016 WL 5539884, at *4.

[51] *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 262 (2017) (cleaned up).

[52] *Furek v. Univ. of Del.*, 1986 WL 2837 at *1 (Del. Super. Ct. Jan. 9, 1986) *aff'd* 594 A.2d 506, 526 (Del. 1991) (affirmed in part, reversed in part on issues unrelated to jurisdiction).

[53] *Furek*, 1986 WL 2837 at *1.

chapter, incorporated in Virginia,[54] had "with Delaware is that it chartered a local chapter, a contact from which it has benefitted and continued to benefit."[55] The Court noted that "since *International Shoe,* minimum contacts have been found where a defendant maintained a single isolated contact with a state."[56] This Court found "a sufficient nexus between this single contact and the conduct of the local chapter so that the exercise of *in personam* jurisdiction over [the national chapter] will not offend the 'traditional notices of fair play and substantial justice.'"[57]

21.     So, too, here. ΣAE chartered Delaware Alpha and receives "fraternity dues, health-and-safety fees, province fees, local dues and/or housing/association fees" from that local chapter.[58] ΣAE has benefitted and continues to benefit from its affiliation with Delaware Alpha.[59] The complaint alleges sufficient facts to establish this Court's specific personal jurisdiction over ΣAE.

---

[54] *Id.*

[55] *Id.* at *2.

[56] *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

[57] *Id.* (quoting *International Shoe*, 326 U.S. at 316).

[58] D.I. 36 at 10.

[59] *See Furek*, 1986 WL 2837 at *2.

### B. Castañeda-Vera has alleged reasonably conceivable facts susceptible to proving ΣAE's vicarious and custodial liability.

#### i. Vicarious Liability

22. ΣAE argues that Castañeda-Vera failed to demonstrate ΣAE's agency or control over the local chapter members and therefore, cannot be held liable for the actions of Delaware Alpha members.[60] Castañeda-Vera responds that ΣAE's membership documents establish its agency and control over Delaware Alpha members, making them vicariously liable.[61]

23. A defendant may be vicariously liable when:

(1) the acting (or non-acting) party's negligence actually and proximately caused the plaintiff's injuries; (2) the act (or omission) of the acting (or non-acting) party is within the scope of an agency relationship with the defendant,; (3) the acting (or non–acting) party is in its day-to-day activities subject to a right of control of the defendant; and (4) there are no affirmative defenses precluding the defendant's liability.[62]

24. "To establish an agency relationship, one party must consent to have another act on its behalf, with the principal controlling and directing the acts of the

---

[60] ΣAE MTD at 11-14.

[61] D.I. 36 at 9-10.

[62] *Marshall v. Univ. of Del*, 1986 WL 11566 at *1 (Del. Super. Oct. 8, 1986) (citations omitted).

agent."[63]  When it comes to determining if the principal controlled the agents day-to-day activities the question is "whether the given agency relationship is one in which the principal, either by contract or custom, may interfere with or direct the actions of the agent."[64]

25.    This Court, in *Marshall v. University of Delaware*, assessed whether the Sigma Nu National Fraternity could be vicariously liable for injuries caused by fraternity members.[65]  There, Sigma Nu fraternity members "attempted to force their way into a party," causing a fight which resulted in the plaintiff being struck in the eye by a bottle and injured.[66]  The Court found that the fraternity members "duty to take reasonable precautions extended to anyone who would have foreseeably been within the scope of the risk created by the [members] conduct"[67] and that "[o]ne could reasonably conclude that the plaintiff, as an invited guest at the party, was within foreseeable scope of the risk."[68]  In assessing the scope of an agency relationship between the National Fraternity and its Delaware Chapter, the Court

---

[63] *Pinnacle IV, L.P. v. CyberLabs AI Holdings Ltd.,* 2024 WL 3252672 at *4 (Del. Cuper. Ct. July 1, 2024) (citing *Baccellieri v. HDM Furniture Indus., Inc.*, 2013 WL 1088338, at *3 (Del. Super. Ct. Feb. 28, 2013)).

[64] *Marshall*, 1986 WL 11566 at *3.

[65] *Id.* *2-3.

[66] *Id.* at 1, 3.

[67] *Id.* at *3.

[68] *Id.*

found that "one of the purposes of a fraternal association is to develop ties of friendship and fellowship among its members"[69] and "the constitution and 'laws' of [the National Fraternity], confers upon local chapters the right to enforce certain standards of conduct against the [National Fraternity] membership."[70]  The Court found that the National Fraternity had the "power to control the individual members of the local chapter as well as the chapter as an entity."[71]  A jury could reasonably conclude that the fraternity members attendance at the party was within the scope of the fraternity's purpose[72] and that the National Fraternity "had the right to control the day-to-day activities of its members in relation to their activities at the University."[73]

26.    ΣAE directs this Court's attention to *Barenborg v. Sigma Alpha Epsilon Fraternity*, where the California Court of Appeals found that ΣAE's "Minerva's Shield," a document defining fraternity expectations, "'has no power to control the activities or operations of any Chapter Collegiate' and that subject to certain duties, local chapters 'shall be virtually independent of [ΣAE]' and 'have complete control

---

[69] *Id.*

[70] *Id*.

[71] *Id*. at *8.

[72] *Id*. at *3.

[73] *Id*.

13

of [their] own activities.'"[74] That Court held that "Fraternity Laws" such as the Minerva's Shield were insufficient in establishing the National Chapter's right to control the local chapter's day-to-day activities.[75]

27. The Court need not resolve any conflict between these cases here. The parties have presented cases procedurally positioned at summary judgment where evidence is available to support, or contradict, pled allegations. Here, ΣAE seeks dismissal before any facts are developed. This Court is incapable of assessing the adequacy of Castañeda-Vera's proof at this stage. Rather, the sole question for the Court is whether he has offered reasonably conceivable set of circumstances under which he may recover. He has done so.

28. The social gathering, or party, precipitating Castañeda-Vera attack is within the scope of ΣAE's purpose.[76] As for ΣAE's ability to control the day-to-day operations of Delaware Alpha, Minerva's Shield offers some guidance. That document contains ΣAE's risk management policies, which are binding on every local chapter and individual member of the fraternity and covers issues such as violent assaults on fraternity guests at the hands of fraternity members.[77] ΣAE also

---

[74] *Barenborg v. Sigma Alpha Epsilon Fraternity*, 244 Cal.Rptr.3d 680, 693 (Cal. Ct. App. 2019).

[75] *Id.* at 694.

[76] *See Marshall*, 1986 WL 11566 at *3.

[77] Compl. ¶¶ 12-13.

maintains a code of conduct and bylaws that exist to control its members conduct with respect to risk management policies.[78] Castañeda-Vera pleads sufficient facts to support a finding that ΣAE may be vicariously liable for the local chapter's, and chapter members' conduct.

### ii. Custodial Liability

30. ΣAE argues that Castañeda-Vera did not plead any facts showing that ΣAE owed him a duty, ΣAE breached that duty, or that "ΣAE knew or should have known that these particular assailants were 'likely to cause bodily harm' to Plaintiff or anyone else."[79] Castañeda-Vera argues that fraternity members are generally members of a class that most men would agree "need to be controlled," and for that reason, ΣAE could reasonably foresee that the fraternity members, when acting in the scope of the fraternity, and "under color" of the fraternity, would need to be controlled.[80] The lack of control on ΣAE's part, Castañeda-Vera argues, resulted in his physical injury.[81]

30. A defendant may be found liable under a theory of custodial liability:

> where a party other than the defendant has acted (or has failed to act) causing an injury to another, the defendant may be held liable (for his own negligence) under a custodial theory of liability if: (1) the

---

[78] *Id*. ¶ 15.

[79] ΣAE MTD at 18.

[80] D.I. 36 at 13-14.

[81] D.I. 36 at 13-14.

defendant had a duty to control the conduct of the acting (or non-acting party); (2) the defendant knew of or had reason to foresee the acting (or non-acting) party's conduct; (3) the plaintiff was within the sphere of foreseeable risk created by the acting (or non-acting) party's conduct; (4) the defendant breached his duty to control the acting (or non-acting) party; (5) the defendant's breach of duty actually and proximately caused the plaintiff's injuries; and (6) there are no affirmative defenses precluding the defendant's liability.[82]

31.     "A party is liable under a custodial theory of liability not for the conduct of another, but for [its] own conduct in failing to discharge a duty to control the conduct of another."[83] "The Restatement (Second) of Torts provides that the duty to control the conduct of another arises only within a 'special relation' either between the party with the duty to control and the party to be controlled or between the party with the duty to control and the party for whose protection the duty to control is imposed."[84] "Whether one has a duty to control another is a question for the Court to decide."[85] "The duty of a fraternity to control the conduct of its members extends only to that conduct which a member engages in as a member;" in which the question is whether the member was acting under color of his fraternity status.[86]

---

[82] *Marshall*, 1986 WL 11566 at *1 (citations omitted).

[83] *Id.* at *4.

[84] *Id.* (citing Restatement (Second) of Torts §315 (1965)).

[85] *Id.* at *5.

[86] *Id.*

16

32. Again, *Marshall* is instructive. There, the Court reasoned that "[i]n order to hold Sigma Nu liable under a custodial theory of liability for the plaintiff's injuries, it must be shown that Sigma Nu's duty to control the conduct of its members was one that Sigma Nu owed to the plaintiff."[87] The Court in *Marshall*, having already found that the National Fraternity had a duty to control the conduct of its members, and had a duty to the plaintiff, proceeded to assess whether the National Fraternity breached its duty to the plaintiff.[88] In *Marshall*, the Court was presented with a documented history of the National Fraternity failing to control the conduct of Sigma Nu members.[89] And, the Court held that it was reasonably conceivable that the National Fraternity owed a duty to the plaintiff and breached that duty when it failed to control Sigma Nu members who had a known history of misconduct.[90] The Court found that the National Chapter was liable under a theory of custodial liability.[91]

33. The Court, in *Marshall,* had the benefit of facts developed through fulsome discovery to determine whether the national chapter breached its duty. The national fraternity's knowledge of prior incidents assisted in that determination.

---

[87] *Id.* at *6.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.*

17

Here, there is no evidence of prior misconduct, but plaintiff has pled sufficient facts warranting further factual development. Whether ΣAE owed a duty to Castañeda-Vera is a fact-specific determination that cannot be made on the record presently before the Court. The Court denies ΣAE's motion to dismiss.

### C. Castañeda-Vera has alleged a reasonably conceivable set of facts that Kaplan, Gravier, Jaroszewski, and Quinn committed assault and battery against him.

34. Kaplan, Gravier, Jaroszewski, and Quinn ("Individual Defendants") contend that Castañeda-Vera's allegation that the "[individual] defendants [were] involved in the physical altercation with [Plaintiff]," is insufficient to support claims of assault and battery.[92] The Individual Defendants argue that the Court should dismiss the Complaint because it "(1) fails to state prima facie claims for assault and battery; (2) fails to aver facts showing that Plaintiff is entitled to relief from [the individual defendants]; and (3) does not allow the Court to draw inferences lending to a reasonably conceivable recovery."[93] Castañeda-Vera responds that he "has pled conceivable claims" against the Individual Defendants for "making intentional, unpermitted contact with his person" and for "intending to make contact with his person and instilling fear in [him]" for purposes of battery and assault.[94]

---

[92] Defs. MTD ¶¶ 3-4.

[93] Defs MTD ¶ 5.

[94] D.I. 37 ¶¶ 4, 5.

18

35.     "A *prima facie* assault case requires a general showing that a Defendant's conduct placed the Plaintiff in apprehension of imminent harmful or offensive physical contact."[95]   For Castañeda-Vera's assault claims to survive a motion to dismiss, Castañeda-Vera "must allege that [the Individual Defendants] (1) acted intentionally, (2) without [Castañeda-Vera's] consent, and (3) [the Individual Defendants'] actions placed [Castañeda-Vera] in fear of imminent harmful or offensive contact."[96]

36.     And, to establish a *prima facie* case "for battery, a Plaintiff must establish the Defendant intentionally caused harmful or offensive contact."[97] "[T]he tort of battery is the intentional, unpermitted contact upon the person of another which is harmful or offensive."[98]  "The intent necessary for battery is the intent to make contact with the person, not the intent to cause harm."[99]

37.     Castañeda-Vera's complaint alleges that the Individual Defendants assaulted and battered him.  He asserts that Lombardo, Erturk, and ten to fifteen other Delaware Alpha members assaulted and battered him inside the fraternity

---

[95] *Rodriguez v. Cahall,* 2024 WL 3161740, at *3 (Del. Super. Ct. June 25, 2024) (citing *Brzoska v. Olson*, 668 A.2d 1355, 1361 (Del. 1995)).

[96] *Smith v. Access Labor Servs., Inc.,* 2022 WL 1538029, at *2 (Del. Super. Ct. May 16, 2022) (citing *Browne v. Saunders*, 2001 WL 138497, at *1 (Del. Feb. 14, 2001)).

[97] *Rodriguez,* 2024 WL 3161740, at *3.

[98] *Brzoska,* 668 A.2d at 1360.

[99] *Id*.

house and then outside in front of the house.[100] Lombardo identified Kaplan, Gravier, Jaroszewski, and Quinn as being involved in the physical altercation with Castañeda-Vera.[101]

38.     At oral argument, the Defendants argued that their identification by Lombardo as being "involved in the physical altercation" is too vague of a statement to support Castañeda-Vera's claim.  But Delaware's motion to dismiss standard is minimal, requiring only a reasonably conceivable set of circumstances to deny a motion to dismiss.[102]  Based on the facts alleged, the Court may reasonably infer that the Defendants, as Delaware Alpha members identified as being involved in the altercation, intentionally engaged in the assault and battery that occurred.  The Court denies Defendants motion to dismiss for failure to state a claim.

## CONCLUSION

39.     Castañeda-Vera's complaint alleges sufficient facts to meet the minimal standard to survive a motion to dismiss.  ΣAE chartered a Delaware Chapter, and Castañeda-Vera pled facts that ΣAE had some control over the day-to-day operations of Delaware Alpha members and that ΣAE owed Castañeda-Vera a standard of care. Allegations in the complaint support a finding that that standard of care was breached

---

[100] Compl. ¶¶ 21-24.

[101] Compl. ¶ 25.

[102] *Cent. Mortg. Co.*, 27 A.3d at 536.

20

when fraternity members attacked Castañeda-Vera. ΣAE's Motion to Dismiss is **DENIED**. Castañeda-Vera has alleged that Alex Kaplan, Christian Gravier, Anthony Jaroszewski, and Brendan Quinn were engaged in the physical attack upon him. Jaroszewski's Motion to Dismiss, joined by Kaplan, Gravier, and Quinn, Quinn's motion to dismiss, and Gravier's motion to dismiss are **DENIED**.

**IT IS SO ORDERED.**

Sean P. Lugg, Judge